UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *BLANCA AMBRIZ, individually and on behalf of D.A., a minor as his Guardian Ad Litem*,<br><br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC. et al.,<br><br>Defendant. | No. 1:19-cv-01391-NONE-SKO<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CVS PHARMACY, INC.'S MOTION TO DISMISS<br><br>(Doc. No. 5) |

**INTRODUCTION**

Plaintiffs Blanca Ambriz, individually, and on behalf of D.A., a minor as his Guardian ad Litem, filed this action in California state court against defendants CVS Pharmacy, Inc. ("CVS"), CVS Store #2944 – Pharmacy ("CVS Store"), and CVS Health Corporation ("CVS Health") after plaintiff D.A. was allegedly provided an incorrect prescription by the CVS Store and suffered from an adverse reaction as a result. (Doc. No. 2.) CVS removed the action to this federal court asserting jurisdiction based on the diversity of citizenship of the parties and that the amount in

/////
/////
/////
/////

controversy exceeds $75,000. (Doc. No. 2.)[1] Currently pending before the court is CVS' motion to dismiss the complaint in its entirety for failure to state a claim. (Doc. No. 5.) For the reasons discussed below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

On March 15, 2018, plaintiffs went to the CVS Store to pick up prescription medication, amoxicillin and ibuprofen, for plaintiff D.A. (Doc. No. 2-4 at ¶ 18.) However, the CVS Store "incorrectly mixed the prescription, leaving it excessively concentrated." (*Id.*) Plaintiff D.A. ingested the incorrectly mixed medication and "within minutes" he began to vomit, had a fever, his eyes rolled to the back of his head, and his entire body shook for about one minute. (*Id.*) Plaintiff D.A. was taken to Sierra View Medical Center in an ambulance and was provided medical care by his primary care physician and Valley Children's Healthcare. (*Id.* at ¶ 19.)

After plaintiff D.A. ingested the incorrect medication, the CVS Store allegedly called plaintiff Ambriz "to inform her that they did not mix the amoxicillin correctly." (*Id.* at ¶ 18.) The CVS Store called plaintiff Ambriz twice on the same day that plaintiffs picked up the incorrectly mixed prescription medication. (*Id.* at ¶ 20.) The following day, plaintiff Ambriz went to the CVS Store with the prescription bottles. (*Id.*) Plaintiff Ambriz spoke to a CVS Store employee who allegedly informed plaintiff Ambriz that "she was sorry for what occurred and said that she was unable to sleep knowing of the mistake that was made." (*Id.*) Plaintiff Ambriz then provided the prescription bottles to the CVS Store employee. (*Id.*) Later that day, another CVS employee called plaintiff Ambriz to provide an update regarding the incident, but the complaint

---

[1] Although plaintiffs do not contest federal jurisdiction under 28 U.S.C. § 1332(a), the court notes that it appears to have jurisdiction over this case based on CVS' representations. Plaintiffs appear to be citizens of California. (*See* Doc. No. 2-4.) CVS, a corporation, is incorporated and maintains its principal place of business in Rhode Island. (Doc. No. 2 at ¶ 10.) The corporate entity for CVS Store is "Garfield Beach, CVS, L.L.C., whose sole member is CVS." (*Id.* at ¶ 2.) Therefore, CVS Store is also a citizen of Rhode Island. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that a limited liability company has the residency of every one of its members). CVS Health is incorporated in Delaware with its principal place of business in Rhode Island. (Doc. No. 2 at ¶ 2.) Therefore, the requirement of complete diversity of citizenship appears to be met. Additionally, plaintiffs do not contest that the amount in controversy exceeds $75,000. (*See id.* at ¶¶ 15–19.) Thus, the court appears to have jurisdiction over this case.

2

does not describe the update that was allegedly provided. (*Id.*) Though CVS allegedly opened a file regarding the incident, "no cooperation or information has yet been provided" to plaintiffs. (*Id.* at ¶ 21.)

The complaint alleges that plaintiffs served a notice of intent to commence a civil action on defendants around February 5, 2019. (*Id.* at ¶ 22.) *See* California Code of Civil Procedure § 364 (requiring notice of intent to sue at least 90 days before filing a complaint asserting a health care provider's professional negligence). On June 13, 2019, plaintiffs filed a complaint in the Tulare County Superior Court. (Doc. No. 2-4.) The complaint utilizes a California Judicial Council form and has attached to it additional pages with factual allegations. (*Id.*) The complaint asserts four claims against defendants for negligence, strict products liability, negligent infliction of emotional distress ("NIED"), and negligent hiring, retention, and supervision of staff.[2] (*Id.*) CVS removed the action to this federal court asserting jurisdiction under 28 U.S.C. § 1332 based on the diversity of citizenship of the parties and that the amount in controversy exceeds $75,000. (Doc. No. 2.) Plaintiffs have not contested federal jurisdiction and, as noted above, the court appears to have jurisdiction over this action.

## LEGAL STANDARD

The purpose of a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In short, the complaint must

---

[2] In the Judicial Council form, for the first claim, plaintiffs check the box for "General Negligence." (*Id.* at ¶ 10.) The form, however, does not contain a box to check for other types of negligence. (*See id.*) In the additional pages section where litigants are required to provide additional facts, plaintiffs refer to their claim as simply "negligence." (*Id.* at 6.)

3

"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

While federal pleading rules require that a plaintiff allege facts showing he or she is entitled to relief, the rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). "Federal Rules of Civil Procedure are designed to discourage battles over mere form of statement." *Id.* (internal quotations and citation omitted). Therefore, a complaint that is "inartfully drawn" will nonetheless survive dismissal if it contains "sufficient facts under the applicable notice pleading standards" of Rule 8(a). *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

**DISCUSSION**

Here, CVS moves to dismiss plaintiffs' complaint in its entirety. CVS argues that because California law only allows "professional" negligence claims to be asserted against healthcare providers, plaintiffs' first claim for "general" negligence must be dismissed. As to the second claim, CVS argues that California law prohibits pharmacies from being held strictly liable. Turning to plaintiffs' third claim, CVS argues that plaintiff Ambriz has failed to allege sufficient facts to recover under the "bystander" theory of NIED. As to plaintiffs' final claim asserting negligent hiring, retention, and supervision, CVS argues that this claim is also a "professional"

negligence claim and therefore, dismissal is appropriate. The court addresses each claim and the respective arguments as to those claims in order below.

**A. First Claim: Negligence**

CVS argues that the "general" negligence claim must be dismissed because California law only allows "professional" negligence claims to be asserted against health care providers. (Doc. No. 5 at 9–12.) Though plaintiffs concede that their first claim should have been labeled as one for professional negligence, they respond that CVS' argument is one of form, rather than substance. (Doc. No. 7 at 4:19–24.) Therefore, dismissal of this claim is not appropriate according to plaintiffs because the complaint includes sufficient factual allegations showing that, if proven, they are entitled to relief under some legal theory. (*Id.*) The court finds plaintiffs' argument on this issue to be persuasive.

California has a statutory regime for medical malpractice and negligence claims, called the Medical Injury Compensation Reform Act of 1975 ("MICRA"). *See, e.g.*, *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 999 (1994) (MICRA "contains numerous provisions effecting substantial changes in negligence actions against health care providers, including a limitation on noneconomic damages, elimination of the collateral source rule as well as preclusion of subrogation in most instances, and authorization for periodic payments of future damages in excess of $50,000.") (citations omitted).

MICRA governs "professional negligence" claims against "health care providers." The term "professional negligence" is defined under MICRA as:

> a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

Cal. Civ. Code § 3333.1(c)(2). In turn, "health care providers" includes entities that are licensed pursuant to Division 2 of California's Business and Professions Code. Civ. Code § 3333.1(c)(1). Pharmacies, which are licensed under Division 2 of the Business and Professions Code, are

5

considered "health care providers" under MICRA. *See* Cal. Bus. & Prof. Code § 4110(a).[3] Here, plaintiffs' claim is subject to MICRA because they allege that the CVS Store (i.e., a healthcare provider) negligently filled a prescription (i.e., rendering of professional services). *See* Civ. Code § 3333.1(c)(2). Therefore, plaintiffs must assert a professional negligence claim.

The elements for professional negligence are duty, breach, causation, and damages. *Wright v. City of L.A.*, 219 Cal. App. 3d 318, 345 (1990); *see Jameson v. Desta*, 215 Cal. App. 4th 1144, 1166 (2013) (defining breach as "failure to use the skill and care that a reasonably careful professional operating in the field would have used in similar circumstances") (internal quotations and citation omitted). Under California law, a pharmacist who fulfills a doctor's prescription acts as an "extension" of that doctor. *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 679 (1985). The pharmacist must not only prescribe the medicine "in accordance with the doctor's orders but also must be alert to errors or problems and bring them to the doctor's attention." *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 132 (1993).

Here, the complaint alleges all the essential elements of a cognizable professional negligence claim. First, it alleges that plaintiffs were owed a duty by CVS. (Doc. No. 2-4 at ¶ 17.) Defendants allegedly "held themselves out to as possessing that degree of skill, ability, and learning, common to healthcare providers in the community, specializing and possessing expertise in the examination, diagnosis, advice, care, treatment and administration of [plaintiff D.A.'s] medical needs." (*Id.*) Second, the complaint asserts that defendants breached this duty by "incorrectly mix[ing] [plaintiff D.A.'s] prescription, leaving it excessively concentrated." (*Id.*)

---

[3] Under the Business and Professions Code, a "pharmacy" is defined as:

> an area, place, or premises licensed by the board in which the profession of pharmacy is practiced and where prescriptions are compounded. "Pharmacy" includes, but is not limited to, any area, place, or premises described in a license issued by the board wherein controlled substances, dangerous drugs, or dangerous devices are stored, possessed, prepared, manufactured, derived, compounded, or repackaged, and from which the controlled substances, dangerous drugs, or dangerous devices are furnished, sold, or dispensed at retail.

Bus. & Prof. Code § 4037.

Third, the incorrect prescription allegedly caused short-term and long-term harm to plaintiff D.A. (*Id.* at ¶¶ 18–19.) And fourth, plaintiffs suffered damages in the form of incurring medical costs. (*See id.*) Therefore, the complaint states a cognizable claim for professional negligence under California law.

CVS argues that because plaintiffs only assert a "general" negligence claim, the court must dismiss it. (Doc. No. 5 at 7:7–10.) Plaintiffs argue that their claim is actually for professional negligence, (Doc. No. 7 at 5:20–21), even though the complaint labels the claim as "negligence" or "general negligence." (Doc. No. 2-4 at 3, 5–6.) In support of their position, plaintiffs argue that the complaint alleges the correct standard of care for a professional negligence claim and that they sent a pre-suit notice to defendants in compliance with MICRA. (Doc. No. 7 at 5:11–19.)

The court concludes that plaintiffs' complaint gives defendant CVS "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47). As the pending motion to dismiss makes clear, CVS understands the nature of plaintiffs' claim (i.e., negligence) and the facts upon which it rests (i.e., incorrectly prescribing D.A.'s medicine). (*See* Doc. No. 5 at 9–12.) The complaint alleges the proper duty for a professional negligence claim and it also states that plaintiffs complied with MICRA's pre-suit notice requirement. (Doc. No. 2-4 at ¶¶ 17, 22.) While the complaint could have labeled the first claim as one for "professional negligence" instead of simply one for "negligence," plaintiffs' "imperfect statement of the legal theory" does not require dismissal under Rule 12(b)(6). *See Johnson*, 574 U.S. at 11. Although the complaint may be "inartfully drawn," the court finds that it contains "sufficient facts under the applicable notice pleading standards" of Rule 8(a). *Mendiondo*, 521 F.3d at 1104. For these reasons, CVS' motion to dismiss with respect to plaintiffs' first claim will be denied.

**B. Second Claim: Strict Products Liability**

CVS next moves to dismiss plaintiffs' second claim for strict liability, arguing that "[i]t is well-established that a pharmacy or pharmacist cannot be held strictly liable for giving out a properly prescribed medication that leads to negative side effects for the patient." (Doc. No. 5 at

12:13–15) (citing *Murphy*, 40 Cal. 3d at 675.) Plaintiffs counters that the medication given to plaintiff D.A. was not properly prescribed and thus the authority relied upon by CVS is inapplicable here. (Doc. No. 7 at 6:13–20.) The court concludes that plaintiffs' position is unpersuasive and unsupported by California law.

The decision in *Murphy* bars plaintiffs' claim for strict liability. There, the California Supreme Court held that a pharmacy could not be held strictly liable for injuries caused by a defective drug. *Murphy,* 40 Cal. 3d at 681. The plaintiff in that case had filed suit against the drug manufacturer and the pharmacy because the prescription drug at issue allegedly suffered from a design defect. *Id.* at 675. *Murphy* did not involve a pharmacy that incorrectly filled a prescription or otherwise failed to follow the doctor's orders. Nonetheless, the California Supreme Court held that pharmacies, as a general matter, cannot be held strictly liable for the sale of prescription medication because pharmacists are primarily in the business of providing a service to the doctor, as opposed to being in the business of selling products to patients. *Id.* at 680 ("The Legislature must have intended, therefore, that even though a pharmacist is paid for the medication he dispenses, his conduct in filling a prescription is to be deemed a service, and, like the manufacturer of blood plasma, a pharmacy is immune from strict liability."); *see also Hernandezcueva v. E.F. Brady Co., Inc.*, 243 Cal. App. 4th 249, 258 (2015) (explaining that "the doctrine of strict liability is ordinarily inapplicable to transactions 'whose primary objective is obtaining services,' and to transactions in which the 'service aspect predominates and any product sale is merely incidental to the provision of the service.'") (citation omitted). Plaintiffs cannot distinguish *Murphy* on the basis that CVS incorrectly filled plaintiff D.A.'s prescription. The decision in *Murphy* stands for the general proposition that pharmacies cannot be held strictly liable for selling prescription medications. *See Garza v. Endo Pharm.*, No. CV 12–1585–CAS, 2012 WL 5267897, at *2 (C.D. Cal. Oct. 24, 2012) (Dismissing a strict liability claim against a pharmacy that allegedly "mislabeled" prescription medication and noting that "[b]ecause under

/////
/////
/////

8

California law pharmacies primarily provide a service, not a product, a breach of warranty claim does not lie.").[4]

Plaintiffs advance two additional arguments, neither of which the court finds to be persuasive. First, they argue that as a general matter "a retailer is strictly liable in tort for defects in products it sells." (Doc. No. 7 at 6:21–22.) In support of this contention, plaintiffs cite a California Supreme Court decision that purportedly "embraced the idea" of applying strict liability principles based on product defects to prescription drugs. (*Id.*) (citing *Sindell v. Abbott Labs.*, 26 Cal. 3d 588 (1980).) However, the case relied upon by plaintiffs discussed liability with respect to drug manufacturers, not drug retailers such as pharmacies. *Sindell*, 26 Cal. 3d at 611. Notably, *Sindell* was also decided five years before the California Supreme Court decided *Murphy*, which as discussed above, bars plaintiffs' claim against the defendant pharmacy for strict liability. Second, plaintiffs argue that a strict liability claim against pharmacies based on a failure-to-warn theory, as opposed to a design-defect theory, is not foreclosed by California law. (Doc. No. 7 at 7:11–15.) Again, in support of this argument plaintiffs rely upon cases discussing a drug manufacturer's duty to warn a doctor, not a pharmacy's duty to warn a patient. *See, e.g.*, *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1483 (1999). Indeed, in their opposition to the pending motion to dismiss, plaintiffs quote language from the decision in *Valentine* demonstrating the case's inapplicability:

> In the case of prescription drugs and implants, the physician stands in the shoes of the "ordinary user" because it is through the physician that a patient learns of the properties and proper use of the drug or implant. Thus, the duty to warn in these cases runs to the physician, not the patient.

---

[4] The court will not read *Murphy* to authorize a cause of action that the court in that case did not consider or discuss. In *Murphy* the California Supreme Court purported to limit its consideration and discussion "only to . . . a pharmacist who fills prescriptions for drugs on the order of a physician or other medical care provider, *and who has used due care in compounding and labelling the drug*." 40 Cal. 3d at 676 (emphasis added). However, "[n]o case since *Murphy* has suggested that a pharmacy that does not use due care can be held strictly liable." *Des Barres v. Am. Med. Aesthetics & Wellness, Inc.*, No. BC479762, 2015 WL 9583084, *4 (Cal. Super. Ct. Jan. 30, 2015). Of course, a federal court "sitting in diversity jurisdiction," must "apply, but [] not create, state law." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1085 (9th Cir. 2009) (Nelson, J. and Reinhardt, J., concurring). Given that California state courts have not recognized a strict liability claim against pharmacies, this federal trial court will not do so here.

9

(Doc. No. 7 at 7:17–22) (quoting *Valentine*, 68 Cal. App. 4th at 1483.)  Plaintiffs are thus not aided by the decision in *Valentine* or the other decisions cited in their opposition to the motion to dismiss.

In sum, plaintiffs cannot overcome the California Supreme Court's decision in *Murphy*. They have failed to cite any state court decision post-*Murphy* suggesting that under California law, pharmacies may be held strictly liable under the circumstances alleged here.  Therefore, plaintiffs' second claim must be dismissed.

**C. Third Claim: NIED**

Plaintiffs' complaint appears to assert the NIED claim on behalf of both plaintiffs.  (Doc. No. 2-4 at ¶ 37) ("[B]oth Ms. Ambriz and her minor son were severely traumatized and experienced severe emotional distress.").)  In their opposition to the motion to dismiss, however, plaintiffs concede that the NIED claim is "solely" brought on behalf of plaintiff Ambriz.  (Doc. No. 7 at 8:4–5.)[5]  The court will, therefore, analyze the NIED claim only from the standpoint of plaintiff Ambriz.

"Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply."  *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993).  "The distinction between the 'bystander' and the 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff."  *Id.* (citation omitted).  As the California Supreme Court has explained:

> "Bystander" claims are typically based on breach of a duty owed to the public in general, . . . whereas a right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff.

*Id.* at 129–30 (citations omitted).  To the extent that plaintiff Ambriz's NIED claim is based on a

---

[5] While the court may not consider "new allegations" contained in an opposition to a motion to dismiss in determining whether a complaint should be dismissed under Rule 12(b)(6), *see Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (internal quotations omitted), the court may consider "concessions" made in plaintiffs' opposition to the motion to dismiss.  *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012) (citation omitted).

direct-victim theory, her claim is barred. *See id.* at 152 ("When the plaintiff is not the defendant's patient, however, 'courts have not extended the *Molien* direct-victim cause of action to emotional distress which is derived solely from a reaction to another's injury.'") (citation omitted).

To state a cognizable bystander-NIED claim, plaintiff Ambriz must allege that she:

> (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.

*Thing v. La Chusa*, 48 Cal. 3d 644, 667–68 (1989) (footnotes omitted). Here, the parties do not dispute the first and third elements, but they disagree as to the second element with respect to plaintiff Ambriz's awareness, i.e., whether it is adequately alleged that she was "aware" that the "injury producing event" was "causing injury to the victim." *See id.* CVS argues that plaintiff Ambriz must allege that, at the time she witnessed plaintiff D.A. in pain after ingesting the incorrect medicine, she was aware that defendants' conduct was responsible for causing that pain, as opposed to merely being aware that plaintiff D.A. was in pain without knowing the cause. (Doc. No. 5 at 13:18–22.) Plaintiffs counters that plaintiff Ambriz was not required to be aware that defendants' conduct was negligent. (Doc. No. 7 at 8:15–17.) Plaintiffs' response misses the mark.

As alleged, the complaint fails to state a cognizable claim for NIED against CVS under the bystander theory. The California Supreme Court has held that recovery is allowed under the bystander theory "when there is observation of the defendant's conduct and the child's injury and *contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child.*" *Ochoa v. Superior Court*, 39 Cal. 3d 159, 170 (1985) (emphasis added); *see also Fortman v. Forvaltningsbolaget Insulan AB,* 212 Cal. App. 4th 830, 835 (2013). Although plaintiff Ambriz is not required to allege that she was aware that CVS' conduct was negligent at the time she saw plaintiff D.A. suffer the adverse reactions, she must allege that she was aware at that time that CVS' conduct—incorrectly filling a prescription—was causing plaintiff D.A.'s adverse reaction. Plaintiffs' complaint does not allege, directly or impliedly through factual allegations,

11

that plaintiff Ambriz had "contemporaneous awareness the defendant's conduct" was "causing harm to the child." *See Ochoa*, 39 Cal. 3d at 171. (*See* Doc. No. 2-4 at ¶¶ 32–39.) Accordingly, plaintiff Ambriz cannot maintain her NIED claim in light of the allegations of the complaint. Therefore, the NIED claim must also be dismissed.

**D. Fourth Claim: Negligent Hiring, Retention and Supervision of Staff**

In addition to holding CVS indirectly liable for the negligence of its employees, plaintiffs also seek to hold CVS directly liable for negligently hiring, supervising, and/or retaining its employees. (Doc. No. 1 at ¶ 41.) More specifically, plaintiffs allege that "the staff at CVS were not properly trained and/or were otherwise unfit or incompetent to perform the duties assigned to them" and that CVS was aware of these issues but failed to correct them. (*Id.* at ¶¶ 42–43.) In its pending motion to dismiss, CVS argues that plaintiffs' negligent hiring and supervision claim must be brought as a professional negligence claim instead of as a separate cause of action, and therefore dismissal of it is appropriate. (Doc. No. 5 at 11–12) (citing *So v. Shin*, 212 Cal. App. 4th 652 (2013).) In their opposition, plaintiffs concede that the negligent hiring and supervision claim should be "included" with their first claim, "rather than alleged as a separate" claim, but argue that dismissal is not appropriate where, as here, a party has merely imperfectly stated a legal theory for recovery. (Doc. No. 7 at 5:26–6:2.)

Plaintiffs' allegations of negligent hiring, retaining, and supervising state a cognizable claim for professional negligence. In *So*, the plaintiff filed suit against a doctor and the hospital that employed the doctor following the performance of a medical procedure. 212 Cal. App. 4th at 658. With respect to the negligence claim against the hospital, the plaintiffs' theory was two-fold: first, the hospital was directly liable because it hired and continued to employ the doctor despite knowing that he was unfit for the position, and second, the hospital was indirectly liable because the doctor was its agent/employee, i.e., a theory of *respondeat superior*. *Id.* at 659. Given the shortened statute of limitations period for professional negligence claims, the only issue before the court in *So* was "whether plaintiffs' claim [was] for "professional" negligence, and hence [] time-barred, or "ordinary" negligence, and thus [] timely." *Id.* at 662. The state appellate court in *So* reversed the trial court's judgment in favor of the hospital on the indirect

negligence claim, finding that the doctor's alleged conduct was outside the scope of services for which the hospital was licensed, and thus not subject to MICRA's one-year statute of limitations period. *Id.* at 667–68. However, the court also concluded that the plaintiff could not pursue a direct claim against the hospital, which was a healthcare provider under MICRA, for negligently hiring and retaining the unfit doctor because that claim was time barred. *Id.* at 668. The court in *So* explained that "hiring and supervising medical personnel, as well as safeguarding incapacitated patients, are clearly within the scope of services for which the hospital is licensed." *Id.* Accordingly, if the hospital negligently provided these services, a claim would lie in professional negligence. *Id.*

Here, as in *So*, plaintiffs have a direct claim for professional negligence against CVS for hiring, retaining, and supervising allegedly unfit employees. Plaintiffs' complaint alleges that CVS' employees were "unfit or incompetent to perform the duties assigned to them, and they performed those duties in an incomplete and incompetent manner." (Doc. No. 2-4 at ¶ 42.) Although the complaint does not contain allegations explaining what these exact duties were, it does appear to refer to the general duty of pharmacists to correctly fill prescriptions. However, this duty is "clearly within the scope of services for which the [pharmacy] is licensed." *See So*, 212 Cal. App. 4th at 668. As state law explains, a pharmacy is where "prescriptions are compounded" and where "controlled substances" are "prepared" and "repackaged" to be "sold" and "dispensed at retail." Bus. & Prof. Code § 4037; *see also Huggins*, 6 Cal. 4th at 132 (noting the duty of pharmacists to fill prescriptions "in accordance with the doctor's orders"). In turn, a pharmacy must be licensed to engage in these services. *See* Bus. & Prof. Code § 4110(a).

Therefore, plaintiffs' claim for negligent hiring, retention, and supervision of staff is based on conduct—incorrectly filling a prescription—that indisputably falls within the scope of services for which CVS is licensed as a pharmacy under California law. Because plaintiffs complain of the negligent rendering of "professional services" by a "healthcare provider," plaintiffs claim sounds in professional negligence and is governed by MICRA. Cal. Civ. Code § 3333.1(c)(2).

Accordingly, it must be determined whether this claim is subject to dismissal, as CVS requests, or should simply be "included" in plaintiffs' first claim, as plaintiffs request. The court

will do neither. First, as discussed above, the court will not dismiss a complaint that is "inartfully drawn" so long as it contains "sufficient facts under the applicable notice pleading standards" of Rule 8(a). *Mendiondo*, 521 F.3d at 1104. Here, CVS is on notice that the nature of this claim is one of professional negligence, as its own motion to dismiss points out. (*See* Doc. No. 5 at 11:4– 12:10.) Therefore, CVS' request to dismiss this claim is inappropriate. *See Johnson*, 574 U.S. at 11 ("Federal Rules of Civil Procedure are designed to discourage battles over mere form of statement.") (internal quotations and citation omitted).

Second, the court will deny plaintiffs' request to "include" this claim in their first claim as unnecessary. As a general matter, a plaintiff may maintain both an indirect and direct claim of negligence against a healthcare provider. An indirect claim is based on a theory of *respondeat superior*, whereas a direct claim seeks to holds the entity directly liable for its own conduct. Here, plaintiffs' first claim seeks to hold CVS liable based on a theory of *respondeat superior*, i.e., CVS' employees were negligent in filling plaintiff D.A.'s prescription. Plaintiffs' fourth claim, on the other hand, seeks to hold CVS liable based on its own conduct or lack thereof, i.e., CVS negligently hired, retained, and supervised its pharmacists and/or employees. Because the court finds that separating the claims provides clarity with respect to the issues presented by plaintiffs' complaint, the court will not "include" this claim into plaintiffs' first claim.

In any event, CVS' motion to dismiss with respect to the fourth claim will be denied. Plaintiffs' complaint states a cognizable professional negligence claim against CVS for hiring, retaining, and supervising allegedly unfit employees.

**E. Leave to Amend**

Federal Rule of Civil Procedure 15(a) instructs courts to "freely give leave when justice so requires." The Supreme Court has held that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). When granting a motion to dismiss, the Ninth Circuit has explained that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation omitted). Here, plaintiffs have filed only one complaint and requested leave to amend the complaint to address any deficiencies found

14

by the court in their original complaint.  (Doc. No. 7 at 10:4–6.)  Further, the court finds that plaintiffs' complaint may "be cured by the allegation of other facts."  *See Lopez*, 203 F.3d at 1130.  Accordingly, the court will grant leave to amend.  If plaintiffs elect to file an amended complaint, however, they are advised <u>not</u> to use the California Judicial Council form complaint in this federal action.

**CONCLUSION**

For the reasons explained above:

1. CVS' motion to dismiss (Doc. No. 5) is granted with respect to plaintiffs' second and third claims and is denied with respect to the first and fourth claims; and
2. In the event plaintiffs wish to attempt to cure the pleading deficiencies noted herein, they are granted twenty-one (21) days from the issuance of this order to file an amended complaint clearly labeled as such.

IT IS SO ORDERED.

Dated: **April 2, 2020**

UNITED STATES DISTRICT JUDGE